# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

TIMOTHY DEAN JONES                                                               **PLAINTIFF**

v.                                                             **CIVIL ACTION NO. 1:17CV-P78-GNS**

TODD CATRON @ KY.GOV *et al.*                                        **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff Timothy Dean Jones, currently a prisoner at the Northpoint Training Center, filed a *pro se* complaint (DN 1) and supplement (DN 9) pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court on initial screening of the complaint and supplement pursuant to 28 U.S.C. § 1915A. For the reasons that follow, the Court will dismiss the action.

### I.

Plaintiff brings this civil-rights action against the following Defendants in their individual and official capacities: (1) "Todd Catron @ Ky.gov," a social services clinician in the Warren County Permanency Unit; (2) Debbie Prioffydale, who he indicates is the Edmonson Circuit Clerk; (3) Hon. Mary Gaines Locke, who he designates as "assistant counsel"; (4) Tonya Hodges, "Edmonson County Courts" Clerk; (5) Thomas Vallandingham, Plaintiff's court-appointed guardian ad litem; (6) Gloria Hennion, a social services worker for the Commonwealth of Kentucky Cabinet for Health and Family Services (CHFS); (7) Hon. Mark Rice, Plaintiff's public defender in a Jefferson Circuit Court criminal action; and (8) Hon. Mica Wood, a guardian ad litem.

While Plaintiff's complaint and supplement are not a model of clarity, the Court has attempted to set out his claims as clearly as possible. In reading the complaint, its supplement, and the various attachments to both, it appears that Plaintiff is complaining that two petitions for

involuntary termination of parental rights filed in Edmonson Family Court were negligently brought against him because he was not the father of either child. He also seems to claim that the petitions indicated that he was a murderer, which he states he is not.

Plaintiff claims, "The neglect in petition is obvious, at face value, of the little research it would have took, to confirm trueth." He further states, "For me, this is a lot deeper mistake, than a clerical error of mistaken identity" because "Defendants made a murderer a sex-offender and a murder a sex-offender. . . . This is a credibility attack . . . . The petition clearly states in No. 13 prior incident 2006-2007 'where was parental rights, or was I a murderer then,' ignored." In the supplement, Plaintiff attaches a "print out of (KOOL) Kentucky Offender Online Lookup" and claims "Everyone with the internet, can see I'm not in jail for murder. Why? Did petitioners not look or counsel." He also seems to indicate that Defendant Catron obtained his prior criminal records which fail to show that he is convicted for murder.[1] Plaintiff states that according to "Rule 602-petitions, state, factual allegations. Then in KRS 422.180 Notice; of Guardian ad litem duties; shall protect against fraud, imposition, or injury."

Plaintiff claims,

> I found my self, repeatedly questioning the intent of this petition. Because, the basis was the welfare of the children involved. Every defendant 1-7, made me feel like a personal attack took place, on me, while I'm defenseless. By using, a erroneous corollary for the ground for a culpability. That could have not even included me in. Just by doing their job. But, no I've had three months of trying to confirm information, to prepare a salient against attack that should have been confirmed before a petition was even drawn up.

---

[1] Plaintiff states that Defendant Catron requested "Certified Court Records, from Jefferson County – Records Department on 8-12-16 they was tenders the same day." He claims that Defendant Catron requested various documents and information regarding three specific case numbers: (1) No. 12-CR-000393 ("3 accounts sexual abuse 1st degree"); (2) No. 09-M-026196 ("D.U.I. 1st offense"); and (3) no. 91-CR-001306 ("3rd degree rape . . . shock probated . . . I thought this was taken completely off my record").

He states, "Someone implicated me and convicted me of murder and endangering a child (3) kids, when it could have been researched, to not include me at all."

The complaint, supplement, and attachments indicate that Defendant Vallandingham was appointed on December 19, 2016, as Plaintiff's guardian ad litem in the two Edmonson Family Court actions seeking involuntary termination of Plaintiff's parental rights. Plaintiff states that during a January 13, 2017, phone call with Defendant Vallandingham,

> I express my concern with being implicated for a crime. [Defendant Vallandingham] assured me, this is not what it is. But, if I see my name as a defendant and has obvious statements saying I'm responsible for childrens well being. I seen, not only am I being implicated, I've been prosecuted with no Indictment or Due process. Based on fraudulent information, that "I" had to confirm as false. Not the defendants, who had access to research easily.

Plaintiff additionally alleges that on February 18, 2017, he wrote Defendant Clerk Hodges "asking for any and all documents with my name on them or surrounding my name." Plaintiff advises that he received various documents in response. He claims that review of those documents revealed that while the filing notices indicated they were sent to all parties, some of the notices were not sent to him but to Lisa Jones, the children's mother; David Philpott, Jr.; "and counsel Comm. Greg Vincent, [Defendant] Thomas Vallandingham and [Defendant] Gloria Hennion." Although not clear, he also seems to allege that Defendant Locke submitted a filing on January 7, 2017, with a certificate sent to everyone, except Plaintiff. Plaintiff states, "I see a cover up because, no one is wanting to give me any information regarding the phone call [with Defendant Vallandingham] or who is responsible, for such a fraudulent neglect for professionalism." He further states, "I believe it's obvious the information is being withheld. Just like the state provided counsel not letting me know a conclusion, of the January 25, 2017 court hearing."

Attachments to the complaint and supplement indicate that Defendant Vallandingham filed motions to dismiss the petitions for involuntary termination of parental rights on the basis that, because Plaintiff is not the biological or legal/putative father of either child, CHFS cannot terminate rights that do not exist. At a March 8, 2017, hearing, the Edmonson Family Court granted the motions to dismiss without objection, and by order entered March 10, 2017, Plaintiff was dismissed as a party from the termination actions.

To the supplement, Plaintiff attaches a July 14, 2017,[2] letter he received from Defendant Vallandingham, who responded to various questions Plaintiff asked him by earlier letter. Defendant Vallandingham's letter sheds some light on the family court proceedings. Defendant Vallandingham writes:

> To my knowledge, no one violated their duty as professionals. Rather, it appears the system worked as designed. The Petition for Involuntary Termination of Parental Rights listed you as the legal father of the children simply because you were still legally married to the children's mother at the time of their birth. This potentially meant that you were the legal father or at least raised a potential presumption. As such, the Commonwealth and [CHFS] had to name you as a party in order to be thorough and to ensure that "all parental rights" to the children would be terminated. The allegations in the petition are not random or arbitrary; rather they are the statutory basis needed to terminate a parent's parental rights. They also are not arguabl[y] false. The issue is not that you did not do what was alleged in the petition; the issue is that you ha[d] no legal duty to do what they claimed you failed to do. You did not have a duty to provide, care for, nurture, or otherwise parent the child because you were not the father – that was the actual issue. . . . The Court appointed me as your counsel, you and I discussed the allegations, and I was able to argue based on the facts that were available to me, that under the laws of the Commonwealth, you were not a legal father of the children, you had no duty to parent the children, so the Court dismissed the claim . . . .

Finally, Plaintiff states that he is suing Defendant Rice, who Plaintiff identifies as his public defender in a Jefferson Circuit Court criminal action (No. 12-CR-0393), due to Defendant

---
[2] The letter is actually dated July 14, 2016, but based on the allegations in the letter, as well as in the complaint and supplement, the year should be 2017.

Rice's alleged conduct during the criminal case. Plaintiff further states, "But, the main reason, I have included Defendant [Rice], in this suit is, the personal attack my childhood. Making me a willing participator, of my own abuse by not using a moral and proffessional standards, at my shock probation hearing conducted 2-21-13." Plaintiff claims that he has raised claims against Defendant Rice in a state post-conviction "RCr 11.42 motion" and is awaiting a judgment. He also claims that he was working on a "Cr 60.02 motion" and that "the petition for involuntary termination of parental rights; interrupted a already stressed attempt to claim some kind of credible dignity through out my entire incarceration."

Plaintiff alleges due process violations, "7th constitution a right to a jury for fraudulent murder conviction and wanton endangerment on a child and now elegal transaction with a minor," double jeopardy, abuse of process, libel, defamation, and violations of Sections 2, 7, 9, 11, 12, 13, 17, 19, 26, 115 of the Kentucky Constitution.

As relief, Plaintiff seeks injunctive relief in the form of "a full disclosure and expungement of Edmonson Circuit Courts fraudulent: libel created." He also seeks the following "other" relief: "explain, in a written response how individual neglect has been allowed to defame a honorable court."

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore

exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

#### *A. 42 U.S.C. § 1983*

Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

As to Defendant Rice, Plaintiff's public defender in a Jefferson Circuit Court criminal case, "[a] lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983." *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981)). While an exception exists if an attorney has engaged in a conspiracy with state officials to deprive another of federal rights, *see Tower v. Glover*, 467 U.S. 914, 920 (1984), Plaintiff has not set forth facts sufficient to state a conspiracy claim. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). Plaintiff, therefore, fails to state a § 1983 claim against Defendant Rice, and the claims against him will be dismissed.

The remaining allegations in the complaint and its supplement appear to revolve around the filing of two petitions for involuntary termination of Plaintiff's parental rights filed in

Edmonson Family Court. Plaintiff seems to claim that the petitions were negligently brought against him because he was not the father of either child and that the petitions erroneously indicated that he was a murderer.

The only federal claims mentioned in the pleadings are due process violations, denial of a right to jury trial, and double jeopardy.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "Procedural due process generally requires that the [government] provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." [3] *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005) (citing *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001)).

---

[3] Substantive due process is "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (citing *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1216 (6th Cir. 1992)). It protects the individual from "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). In particular, substantive due process "protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003)). "It also protects the right to be free from 'arbitrary and capricious' governmental actions, which is another formulation of the right to be free from conscience-shocking actions." *Id.* "In other words, the 'arbitrary and capricious' standard . . . is simply another formulation of, but is no less stringent than, the more traditional 'shocks the conscience' standard." *Bowers*, 325 F.3d at 763.

For the reasons explained in this decision, Plaintiff fails to allege the existence of a protected liberty or property interest. Even if he had, none of Defendants' conduct alleged by Plaintiff was conscience shocking or violated the decencies of civilized conduct. *See Parrino v. Sebelius*, 155 F. Supp. 3d 714, 723 (W.D. Ky. 2015), *aff'd sub nom. Parrino v. Price*, 869 F.3d 392 (6th Cir. 2017) ("The Sixth Circuit Court of Appeals has stated that '[c]onduct shocks the conscience if it violates the decencies of civilized conduct.' Furthermore, 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'") (citations omitted). For these reasons, Plaintiff fails to state a substantive due process claim.

Here, Plaintiff does not identify any liberty or property interest which he has been denied in relation to having the petition for involuntary termination of parental rights brought against him. In fact, the filing of the petitions and notifying Plaintiff of the possibility of termination was a protective measure to ensure all potential parents were involved in the family court matter. Having failed to identify a protected interest, Plaintiff is not entitled to due process protections. Nevertheless, the state appointed Defendant Vallandingham as guardian ad litem to represent Plaintiff's interests; Defendant Vallandingham, after discussing the matter with Plaintiff, obtained the necessary information proving that Plaintiff was not the father of either child; and, upon motion filed by Defendant Vallandingham, the state court dismissed Plaintiff from the action. Plaintiff simply has stated no injury or harm based on the filing of the petitions against him.

Further, while he mentions defamation, seemingly related to being erroneously identified as a murderer, "[i]njury to reputation, standing alone, is not a liberty interest protected by the Fourteenth Amendment." *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993) (citing *Paul v. Davis*, 424 U.S. 693, 708-09 (1976)). "The Supreme Court has stressed that 42 U.S.C. § 1983 is not an avenue for redress of any and all possible tort claims against the government, and that there exists 'no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.'" *Id.* (quoting *Paul v. Davis*, 424 U.S. at 702).

> Rather, the Court has limited the scope of an actionable liberty interest deprivation to situations involving termination of government employment or the loss of a legal right or status previously enjoyed under state or federal law. In other words, when a plaintiff alleges the loss, infringement or denial of a government right or benefit previously enjoyed by him, coupled with communications by government officials having a stigmatizing effect, a claim for deprivation of liberty without due process of law will lie.

9

> Defamatory publications, standing alone, do not rise to the level of a constitutional claim, no matter how serious the harm to reputation.

*Id.* (citing *Paul v. Davis*, 424 U.S. at 710-12).

Because Plaintiff alleges only defamation (a "credibility attack") in being erroneously cited as a murderer and no other deprivation of a government right or benefit previously enjoyed, he fails to allege a protected liberty interest and, therefore, fails to state a due process claim.

As to Plaintiff's claims that he has been denied the right to a jury trial and has been subjected to double jeopardy, it appears that Plaintiff is asserting these claims due to the family court petitions' erroneously indicating that he is a murderer and that he failed to take care of his children. Plaintiff fails to state a constitutional claim, however, because he was not convicted of murder or of not taking care of his children (because it was decided that he was not the children's father) in connection with the family court petitions.

For all the foregoing reasons, Plaintiff fails to state a federal § 1983 claim upon which relief may be granted, warranting dismissal of the § 1983 claims.

### B. State-Law Claims

Plaintiff additionally alleges violations of multiple sections of the Kentucky Constitution, as well as state-law claims of abuse of process, libel, and defamation. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Having determined that the federal claims over which this Court has jurisdiction should be dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Consequently, the state-law claims will be dismissed without prejudice.

For the foregoing reasons, the instant action will be dismissed by separate Order.

Date: November 3, 2017

**Greg N. Stivers, Judge
United States District Court**

cc: Plaintiff, *pro se*
      Defendants
4416.005